No. 38,167

ELIZABETH LEWIS, *Appellee,* v. VICTORY OIL COMPANY,
a corporation, *Appellant.*

(228 P. 2d 709)

Opinion filed March 10, 1951.

*Thomas H. Finigan,* of Kansas City, argued the cause, and *George W. Thomas,* of Kansas City, was with him on the briefs for the appellant.

*William H. McCamish,* of Kansas City, argued the cause, and *Chester H. Loughom,* of Kansas City, was with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action to recover damages for alleged unlawful eviction from premises, a gasoline filling station together with vacant ground in the rear of the station on which plaintiff during a portion of the time also operated a trailer camp, and for the conversion of personal property located on the premises. The jury returned a general verdict in favor of the plaintiff and answered special questions. The defendant, Victory Oil Company, a corporation, appeals.

Appellee contends appellant, for several reasons, is not entitled to be heard on appeal. The grounds have been examined but we think only one of them requires treatment. Appellee directs attention to the fact appellant's specifications of error were set forth for the first time in its brief instead of in its abstract as required by rule 5 of this court. Appellant filed its abstract November 2, 1950, and its brief on November 30. Appellee did not file a motion to dismiss the appeal. On January 15, 1951, appellee filed her brief in answer to the specifications of error listed in appellant's brief. Those

specifications of error are the identical points separately listed in the notice of appeal, which notice was contained in the abstract. There is no basis for concluding appellant's oversight in listing the specifications of error in the abstract misled appellee or handicapped her in the slightest in answering appellant's contentions. Under the circumstances stated we are not inclined to dismiss the appeal.

Before considering other portions of the record a brief statement of the issues joined by the pleadings will be helpful.

In her petition appellee, in substance, alleged:

On November 29, 1946, she and defendant through its president, George W. Martin, entered into a written lease of an oil and gas filling station together with ground at the rear thereof on which appellee later located some trailers; the term of the lease was from December 1, 1946, to December 1, 1947, at the agreed rental of $75.00 per month, payable December 1 and on the first day of each succeeding month; upon expiration of the lease appellee continued to occupy the premises and became a tenant from year to year and remained so until November 2, 1949; on October 31, 1949, appellee gave appellant a check for the rental to December 1, 1949, but it was returned to her November 14; on November 2, 1949, during her absence from the premises and without her consent appellant entered thereon and took possession thereof and converted to its own use personal property (listing it) of the value of $665.72 and of other articles of equipment (listing them) of the value of $750.00; appellee made demand on appellant to surrender possession and for a return of the personalty, which demand was refused; appellant served no legal notice terminating the tenancy from year to year and as a result thereof appellee was entitled to remain in possession until December 1, 1950; appellee was damaged in the sum of $4,500 due to loss of profits and in the sum of $1,500 by reason of improvements placed on the premises and was entitled to punitive damages in the sum of $10,000.

Appellant's answer, in addition to admissions of noncontroversial matters, consisted of a general denial; appellee's reply was also a general denial.

Appellant was engaged in the business of selling supplies to oil and gas filling stations. It had leased the instant filling station in order to have another outlet for its supplies. The lease contract provided in part the lease would be terminable immediately if appellee purchased her supplies from others than appellant and that

the utility bills were to be assumed and paid by appellee. Other provisions of the written lease need not be stated now.

Appellant contends: The evidence disclosed appellee had violated the previously mentioned lease provisions prior to November 1, 1949; various checks for supplies were dishonored for insufficient funds; the business had fallen off by reason of appellee's inattention thereto; at the end of the written lease it was definitely understood the rental arrangement would be only from month to month thereafter and that appellee's son would need to remain active in the operation of the business; the son left the business September 1, 1949; appellee also accepted part time employment at the Hotel Phillips and worked there from 5:30 p. m. to 1:00 a. m. and was seldom at the filling station; the business was left to a partner to whom she previously had sold a one-half interest therein; on October 31, 1949, appellant, being unable to locate appellee, served a written notice addressed to appellee on appellee's partner, Charles H. McClintock, at the filling station, to vacate the premises on December 1, 1949; (the partnership was conceded) the notice was left at the filling station and appellee was notified of it by her partner on November 1; appellee entered into an agreement with her partner to sell to him her remaining one-half interest in both the supplies and equipment; in conformity with that agreement she had both the supplies and the equipment inventoried on November 2 or 3; their total appraised value was $665.72, one half of which would be due appellee under the sale contract; appellant thereafter received a check from appellee's partner for a month's rent and also $150 to be held by appellant as a deposit to cover the stock of merchandise, its sale and the equipment furnished to operate the station.

We do not deem it necessary to narrate in detail the testimony of the parties. Only such portions thereof as are material to the two primary issues, namely, eviction and conversion of property, will be considered. And as to those subjects we are, of course, not concerned with any conflict in the evidence which the jury has resolved. Not all of the material questions were submitted to the jury by special questions but those submitted and answered were:

"1. When were improvements made by the plaintiff on the leasehold, if any? A. The improvements were made in 1947.

"2. When did plaintiff sell one-half interest in the business she was operating to McClintock? A. November of 1948.

"3. When did Earl Lewis leave the management of the business? A. September 1 of 1949.

"4. Did the plaintiff, her son Earl Lewis, or anyone working for them make any purchases of merchandise other than from the defendant during plaintiff's tenancy and operation of business? A. Yes, Earl Lewis did.

"5. When, during plaintiff's occupancy, was the rent increased? A. February, 1948.

"6. When, if ever, did plaintiff offer to sell her share in equipment and business to McClintock? A. November 1—1949.

"7. On what date in 1949 did defendant give notice to plaintiff to leave the premises? A. November 15, 1949.

"8. Did plaintiff and her son abandon the tenancy to McClintock? A. No.

"9. What date in 1949 did defendant give notice to McClintock to terminate the plaintiff's tenancy? A. October 31, 1949.

"10. If you allow any damages to plaintiff, state how much for each of the following:

| "Equipment: | $816.99 | Improvements: | Nothing |
| "Loss of profits: | $500.00 | Punitive: | $1,000.00 |

"11. How much money do you find that the plaintiff, Elizabeth Lewis, received from her partnership with Charles McClintock during the calendar year 1949. A. Insufficient evidence."

Appellant filed the following motion:

". . . to strike from answer to question number 10 the finding 'Equipment: $816.99' for the reason that there was no evidence of any kind showing that the equipment was valued at such a price, but on the contrary that the total amount fixed for the equipment by both the plaintiff and her partner, McClintock was $665.72, half of which only would accrue to the plaintiff.

"And to strike from said answer 'Loss of Profits: $500.00' for the reason that in response to the 11th question 'How much money do you find that the plaintiff, Elizabeth Lewis, received from her partnership with Charles McClintock during the calendar year 1949? Answer: Insufficient Evidence.' The answer 'Insufficient Evidence' of itself shows that there was no competent evidence upon which the jury could predicate a finding.

"And to strike from said answer 'Punitive: $1,000.00' for the reason that if no actual damages were sustained or proven there can be no finding as to punitive damages."

Did the court err in overruling this motion? We shall first consider the finding touching loss of profits. Assuming for the moment, without conceding, there was evidence to support the charge of wrongful eviction or conversion of property, the jury found the evidence was insufficient on which to determine loss of profits. That being true appellee failed to make her case on that element of damages whether resulting from wrongful eviction, conversion of property, or both. Having so failed there could be no verdict for loss of profits. Absent actual damage there can be no award of punitive damages. (*Shore v. Shore,* 111 Kan. 101, 205 Pac. 1027; *Behymer v. Milgram Food Stores, Inc.,* 151 Kan. 921, 101 P. 2d 912.) In the Shore case we held:

"Punitive damages are never more than an incident to a cause of action for actual damages, nominal damages will not sustain a verdict for punitive damages, and punitive damages, when allowed, are allowed only in addition to recovered substantial actual damages." (Syl. ¶ 2.)

The foregoing might well end this appeal at least insofar as recovery of loss of profits is concerned. Touching the subject of appellee's eviction we might also add a careful examination of the record makes it exceedingly difficult, if not impossible, to conclude there was evidence appellee was ever evicted by the appellant, wrongfully or otherwise. Appellant's notice of October 31, 1949, did not demand possession of the premises until December 1, 1949. Appellant being unable to find appellee served that notice on her partner at the filling station on October 31. It is admitted appellee received the notice from her partner the next day. We think those facts satisfied the purpose of G. S. 1949, 67-510. (See *Gunter v. Eiznhamer,* 165 Kan. 510, 196 P. 2d 177, and cases therein cited.) The length of notice was sufficient whether the tenancy be properly regarded as one from year to year (G. S. 1949, 67-505) or a tenancy from month to month. (G. S. 1949, 67-504.) A subsequent notice to vacate the premises on December 1, 1949, served on appellee personally on November 15, 1949, was superfluous and did not invalidate the previous notice. As previously stated, however, assuming appellee was wrongfully evicted, she did not establish loss of profits resulting therefrom.

This brings us to the question of damages for conversion of equipment. For this element of damage the jury awarded $816.99. We can find no possible basis in the evidence for that amount. Appellee's own testimony, in substance, was: She had agreed to sell her remaining one-half interest to her partner, McClintock; she had both the supplies and the equipment inventoried on November 2 or 3; they were appraised at the total value of $665.72 and she would be entitled to receive from McClintock one-half of that amount, $332.86; her partner continued to operate the station.

Thus far, however, we have dealt only with the *amount* of damages the jury found appellee had suffered by reason of a conversion of equipment. If appellant wrongfully converted any of the equipment appellee would be entitled to recover some damage, depending upon the value of the article or articles converted. In order to determine whether appellee was entitled to a judgment in any amount for conversion by appellant of any personal property listed

in the petition we are obliged to examine the record. For this answer we turn to appellee's own testimony. As previously stated, George W. Martin was the president of the defendant corporation and it was he with whom appellee had all of her dealings. Appellee was asked and answered as follows:

"Q. At no time during the time you were there, or McClintock for that matter, did Martin have any control over any of these items that you have listed in your petition? A. No, that belonged to Mr. McClintock and I.

"Q. And Martin, never at any time exercised any control over those items? A. No, he knew that they belonged to McClintock and I.

"Q. But he (Mr. Martin) had no control over that, did he? Witness: No, those belonged to McClintock and I."

In view of those conceded facts it is understandable that appellee did not testify she demanded return of the personal property and that appellant refused its return, as she alleged in her petition, Under the unequivocal admissions of appellee that appellant at no time exercised any supervision or control over the items of personalty involved there is no basis for a recovery of any damages from appellant for wrongful conversion of property. That being true there can be no basis for punitive damages on the theory of conversion. We are in no wise concerned here with a cause of action, if any, which appellee may have had against her partner and, of course, express no views thereon.

Appellant's motion to strike answer No. 10 should have been sustained. Being compelled to so conclude we need not consider the effect of finding 4 on the general verdict. Nor need we discuss trial errors specified in appellant's motion for a new trial. The cause must be remanded with instructions to set aside the judgment rendered and to enter judgment for appellant. It is so ordered.